**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

JAMES ARTHUR BLAKEMORE, III,    )
                                )
                    Plaintiff,  )
                                )
            v.                  )            No. 4:21-cv-00841-ACL
                                )
CITY OF ST. LOUIS, et al.,      )
                                )
                    Defendants. )

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion of plaintiff James Arthur Blakemore, III

for leave to commence this civil action without prepayment of the required filing fee. (Docket No.

2). Having reviewed the motion and the financial information submitted in support, the Court finds

that plaintiff lacks sufficient funds to pay the entire filing fee and will assess an initial partial filing

fee of $3.43. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court

will dismiss this action without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

**28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is

required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her

prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial

partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's

account, or (2) the average monthly balance in the prisoner's account for the prior six-month

period. After payment of the initial partial filing fee, the prisoner is required to make monthly

payments of 20 percent of the preceding month's income credited to the prisoner's account. 28

U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

In support of his motion for leave to proceed in forma pauperis, plaintiff has submitted a copy of his inmate account statement. (Docket No. 3). The account statement shows an average monthly deposit of $17.14. The Court will therefore assess an initial partial filing fee of $3.43, which is 20 percent of plaintiff's average monthly deposit.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must show a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should

construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is a self-represented litigant currently incarcerated at the Ste. Genevieve Detention Center in Ste. Genevieve, Missouri. He brings this civil action pursuant to 42 U.S.C. § 1983, naming the City of St. Louis, Officer John Doe #1-6, Assistant Circuit Attorney Michael Dewayne Griffith, and the St. Louis Metropolitan Police Department as defendants. (Docket No. 1 at 2). The John Doe defendants are sued in both their individual and official capacities, while Prosecutor Griffith is sued in an individual capacity only. The complaint alleges numerous constitutional violations stemming from plaintiff's arrest on September 14, 2018.

With regard to his "Statement of Claim," plaintiff has attached three separate documents. The first is titled "Criminal Complaint," the second is an "Affidavit of Facts," and the third is a "Statement of Claims." The Court will attempt to summarize each in turn.

### A. Criminal Complaint

The first document comprising plaintiff's overall "Statement of Claim" is titled "Criminal Complaint." (Docket No. 1-1 at 1). In the document, plaintiff accuses defendants of violating 18

U.S.C. § 242, which is a federal statute criminalizing the deprivation of rights under the color of law.[1] The document is a single page, most of it a recitation of the statutory language.

### B. Affidavit of Facts

The second document comprising plaintiff's overall "Statement of Claim" is titled "Affidavit of Facts." (Docket No. 1-1 at 2). In the affidavit, plaintiff asserts that he has been deprived of his constitutional rights "under case cause number: 1822-CR03210-01." The affidavit consists of a total of eight handwritten pages. Due to the nature of plaintiff's allegations, the Court will go through the document page by page.

After a preamble on the first page in which plaintiff attests that "the following is fact[ually] true and correct under penalty of perjury," he asserts on the second page that defendants have conspired "to injure, oppress, or intimidate" him in "the free exercise or enjoyment of" his constitutional rights. (Docket No. 1-1 at 2-3). In short, he suggests that defendants are guilty of violating 18 U.S.C. § 242. (Docket No. 1-1 at 3).

On page three of the affidavit, plaintiff states that "every defendant named in this complaint" acted under color of state law. (Docket No. 1-1 at 4). He asserts that on September 14, 2018, "he was unlawfully detained based on a probable cause finding that relied on fabricated evidence." This resulted in him being "removed from [the] place where [he] was found against [his] will," and being placed into the St. Louis City Justice Center, which interfered "with [his]

---

[1] The Court notes that 18 U.S.C. § 242 is a criminal statute with no private right of action. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2ⁿᵈ Cir. 1994) (stating that 18 U.S.C. § 242 is a criminal statute that does not provide a private right of action); *Davis v. Norwood*, 614 F. App'x 602, 605 (3ʳᵈ Cir. 2015) (stating "that 18 U.S.C. § 242, which criminalizes the deprivation of rights under color of law, does not provide a private right of action"); and *Brown v. Express Scripts*, 2018 WL 1295482, at *2 (E.D. Mo. 2018) (dismissing plaintiff's claim brought under 18 U.S.C. § 242 because plaintiff had no private right of action). The Court has instead analyzed plaintiff's claims under 42 U.S.C. § 1983, which provides a way for an individual to seek redress for the violation of constitutionally protected federal rights. *See Beeks v. Hundley*, 34 F.3d 658, 661 (8ᵗʰ Cir. 1994) (stating that "the central purpose of § 1983 is to provide compensatory relief to those deprived of their federal rights by state actors").

liberty and property without due process." He also mentions a warrant that included "a false statement." Ultimately, plaintiff states that the criminal case against him was resolved in his favor. (Docket No. 1-1 at 5).

On page four of the affidavit, plaintiff alleges that John Doe #1 executed a policy or custom that inflicted an injury and harm on him "by withholding exculpatory evidence favorable to and requested by the accused[,] subjecting" him to a constitutional violation. He goes on to state that the "Government Municipality as an entity is responsible for its decision not to train certain employees about their legal duty to disclose evidence favorable to the defense." Plaintiff asserts that the "failure to train [the] prosecutor adequately about their duty to produce exculpatory evidence" resulted in a violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

On page five of the affidavit, plaintiff focuses on two defendants, who he identifies as "Jane/John Doe-02" and "John Doe-03." (Docket No. 1-1 at 6). As to Doe #2, plaintiff states that he or she is:

> personally responsible [for] illegal arrest, false [imprisonment], malicious prosecution based on a probable cause finding that relied on fabricated evidence that where a judicial finding of probable cause is based solely on information the officer knew to be false or would have known to be false had he not recklessly disregarded the truth, the arrest and imprisoned incarceration violates the Fourth Amendment of [the] U.S. Constitution.

This apparently took place between September 19, 2018[2] and August 2, 2019.

Similarly, with regard to Doe #3, plaintiff alleges that Doe #3 "retaliated against him for his speech which cause[d] deliberate indifference[,] restraint [of] life, liberty, [and] property without due process of law by convincing a prosecutor to bring criminal charges against him by

---

[2]The Court notes that in all other parts of the complaint, plaintiff states that his incarceration began on September *14*, 2018, not September 19. It therefore appears that plaintiff's reference to September 19 on page five of his affidavit is an error.

making a lawful arrest for [an] unconstitutional reason ….” He further contends that Doe #3 abused his authority and failed to protect plaintiff's “freedom of speech when [the] police officer used speech creating false information for” plaintiff's arrest on a charge of unlawful possession of a firearm. This occurred between September 14, 2018 and August 2, 2019.

On page six of the affidavit, plaintiff again focuses on two separate defendants, identified as “John Doe-04” and “John Doe-05.” (Docket No. 1-1 at 7). Regarding Doe #4, plaintiff states that he:

> acted with deliberate indifference to the First Amendment of [the] U.S. Constitution [violating his] right to freedom of speech and that their execution [of] policy or custom were a significant moving force behind the illegal detentions.

Plaintiff further states that Doe #4 executed the “policy or custom of allowing false statement[s] under oath or creating false information for arrest [that] in some circumstances resulted in the arrest and detention of citizens in violation of [the] First Amendment.” This occurred between September 14, 2018 and August 2, 2019.

As to Doe #5, plaintiff states that Doe #5 was “personally responsible” for depriving “citizens [of] the right to be free from illegal search and seizures.” He alleges that Doe #5 supported a warrant that included “a false statement” regarding the “unlawful possession of a firearm,” and did so “knowingly and intentionally or with reckless disregard for the truth.” This occurred between September 14, 2018 and August 2, 2019, but eventually “terminated in favor of [the] accuse[d].”

On page seven of the affidavit, plaintiff alleges that a defendant identified as “John Doe-06” was “personally responsible” for assisting in “securing false arrest and[/]or false imprisonment without legal process, and[/]or wrongful institution of legal process and[/]or malicious prosecution.” (Docket No. 1-1 at 8). He insists that Doe #6 “intended to confine” him unlawfully,

resulting in his incarceration in the St. Louis City Justice Center from September 14, 2018 to August 2, 2019, when the matter was "terminated in favor of [the] accused."

The final page of the affidavit is titled "Exhibit A," and consists of a photocopy of a memorandum filed by Prosecutor Griffith that indicates that the State of Missouri has elected not to proceed against plaintiff in his criminal case. (Docket No. 1-1 at 9).

**C. Statement of Claims**

The third document comprising plaintiff's "Statement of Claim" is titled "Statement of Claims." (Docket No. 1-1 at 10). This document consists of thirteen handwritten pages. As above, due to the way that plaintiff has presented his claims, the Court will go through this document page by page.

On the first page, plaintiff asserts that all defendants in this case acted "under color of state law and … are personally responsible" for depriving him of his constitutional rights. In particular, he states that "he was unlawfully detained based on a probable cause finding that relied on fabricated evidence of unlawful possession of a firearm." Plaintiff repeats that "arresting officer(s) defendant(s) 1-6 in their individual and official [capacities] are personally responsible for" depriving him of his "Fourth Amendment right to be free from illegal search and seizures." Though plaintiff does not state what actually happened, he appears to refer to a warrant that "included a false statement" that defendants relied upon "with reckless disregard for [the] truth."

On the second page of the "Statement of Claims," plaintiff asserts that John Doe #1 and John Doe #2 are "personally responsible" for depriving him of his "Fourth Amendment guarantees" to be "free from illegal searches and seizures." (Docket No. 1-1 at 11). He further states that these defendants intended to confine him, and that the confinement lasted from September 14, 2018 to August 2, 2019. Plaintiff includes a long list of purported misconduct by

Doe #1 and Doe #2, including "deliberate indifference," the "restraint of life, liberty, and property without due process of law," the intentional or "reckless disregard for truth," the creation of "false information for arrest when in support of [a] warrant [that included] a false statement," "false arrest without legal process, false imprisonment by detention without legal process, [and] malicious prosecution by wrongful institution of legal process." He alleges that these defendants acted "together as a moving force" to secure his "unlawful arrest and detention based on fabricated evidence."

On page three of the "Statement of Claims," plaintiff mostly repeats the conclusory allegations that he has mentioned before. (Docket No. 1-1 at 12). He states that "[b]odily restraints" were used by "SLMPD arresting officers," and that he was kept "imprisoned without legal authority" from September 14, 2018 to August 2, 2019. Plaintiff reasserts his contention that he was falsely arrested and detained without legal process, in violation of the Fourth Amendment. He states that he was arrested for unlawful possession of a firearm, but was not in unlawful possession "as a matter of law and fact." Plaintiff suggests that federal crimes were committed, and that the officers who arrested him "acted with deliberate indifference to the Fourth Amendment." He also states that the arresting officers' "execution [of] policy or custom" was "a significant moving force behind the illegal detentions," and that they "established" a "policy or custom of allowing" the creation of false information.

On page four of the "Statement of Claims," plaintiff focuses on Prosecutor Griffith. (Docket No. 1-1 at 13). He alleges that Griffith – in his official capacity[3] – was "personally responsible" for executing the "policy or custom" of the City of St. Louis, which caused a violation

_____

[3]The Court notes that in initially identifying Prosecutor Griffith as a defendant, plaintiff indicated that he was suing Griffith in an individual capacity only. However, in this section of his "Statement of Claims," he refers to Griffith in his official capacity.

of due process. He broadly states that he was deprived of his rights due to the "suppression of evidence favorable to an accused upon request," which resulted in his unlawful confinement. Because he was wrongfully confined in the St. Louis City Justice Center, plaintiff asserts that he suffered "mental anguish, wrongful discrimination, loss of mother[,] pain [and] suffering, false imprisonment, defamation of character [and] malicious prosecution."

On page five of the "Statement of Claims," plaintiff explains that his arrest date was September 14, 2018, and that the arrest occurred in the City of St. Louis. (Docket No. 1-1 at 14). He asserts that "arresting officer defendant(s) Jane/John Doe 1-6" acted "together as a moving force when" executing "an official government policy or custom [that] inflict[ed] the constitutional violation." In particular, he again references the "withholding or suppression of evidence favorable to an accused upon request where the evidence was material to guilt." This caused a "restraint of liberty without due process of law … mental anguish, wrongful discrimination, loss of mother, false imprisonment, malicious prosecution, and loss of wages."

On page six of the "Statement of Claims," plaintiff returns to "arresting officer [defendant] John Doe-01," stating that Doe #1 was a member of the St. Louis Metropolitan Police Department and was "personally responsible" for violating his constitutional rights. (Docket No. 1-1 at 15). Plaintiff asserts that Doe #1, along with other "assisting officer(s) … were a significant moving force behind the illegal arrest and[/]or detention during the duration of September 14, 2018 to August 2, 2019." He alleges that he "was prosecuted using fabricated evidence" and that Doe #1 knew that probable cause was based on information that was "false or would have known to be false had defendant not recklessly disregarded [the] truth."

On page seven of the "Statement of Claims," plaintiff accuses the City of St. Louis of being "personally responsible for [the] failure to train [the] prosecutor adequately about their duty to

produce exculpatory evidence." (Docket No. 1-1 at 16). This purportedly led to the "withholding of exculpatory evidence" that violated plaintiff's constitutional rights.

Plaintiff also turns to "St. Louis Metropolitan Police arresting officer defendant(s) John Doe 1-6," asserting that they violated his right to a fair trial by creating "false information likely to influence a jury's decision and [forwarded] that information to prosecutors." Without providing any detail, plaintiff alleges that these defendants fabricated evidence used "to influence a grand jury indictment decision and forwarded [the] fabricated evidence to a prosecutor," resulting in the filing of a criminal case against him.

On page eight of the "Statement of Claims," plaintiff repeats earlier allegations against "Jane/John Doe-1," "John/Jane Doe-2," and "Jane/John Doe-3." (Docket No. 1-1 at 17). As to Doe #1, plaintiff states that he or she "created false information for [his] arrest" for unlawful possession of a firearm on September 14, 2018. With regard to Doe #2, plaintiff claims that he or she "removed [plaintiff] from [the] place where [plaintiff was] found against [plaintiff's] will and without [plaintiff's] consent." With respect to Doe #3, plaintiff asserts that he or she was an "assisting arresting officer [who] participated and [was] personally responsible [for] securing [plaintiff's] illegal arrest and[/]or malicious prosecution and[/]or unlawful detention."

On page nine of the "Statement of Claims," plaintiff asserts that the actions of the City of St. Louis are "more than merely negligent" and "involves the willful, intentional use of government power to invade some protected life, liberty, or property interest possessed by its citizens." (Docket No. 1-1 at 18). As to Prosecutor Griffith, plaintiff alleges that Griffith deprived him "of his liberty interest in unfettered access to exculpatory evidence" and violated a court order to examine the "firearm and provide all discovery to defense." He further states that the "arresting officer defendant(s) have intentionally withheld the evidence of fact [regarding the] taking [of a]

10

replica firearm property interest." Plaintiff contends that this was done without due process and constitutes "a taking of private property without just compensation."

On page ten of the "Statement of Claims," plaintiff notes that the Due Process Clause of the United States and Missouri constitutions prohibit "the taking of life, liberty, or property without due process of law." (Docket No. 1-1 at 19). He further asserts that the Fourteenth Amendment protects property interests and gives the owner of private property the right to "preserve property under his control for lawful use." Plaintiff contends that the actions of "the City of St. Louis … and some of its arresting officer defendant(s)" acted in a "truly irrational" manner when they took his "replica firearm" on September 14, 2018, and arrested him for unlawful possession of a firearm.

On page eleven of the "Statement of Claims," plaintiff states that the taking of his replica firearm was done "for public use without just compensation." (Docket No. 1-1 at 20). He alleges that such a taking violates both the United States and Missouri constitutions. Plaintiff also repeats that he was "unlawfully detained based on a probable cause finding that relied on fabricated evidence," and violated his "right to be free from criminal prosecution except upon probable cause."

On page twelve of the "Statement of Claims," plaintiff reiterates the earlier legal conclusions about what occurred to him, alleging that he was illegally arrested and unlawfully detained in violation of the Fourth Amendment. (Docket No. 1-1 at 21). As before, he states that the warrant included "a false statement," that this "false statement [was] necessary to the finding of probable cause," and that this caused interference with his "liberty and property." Once again, plaintiff does not explain the exact nature of this "false statement," leaving the Court to assume it has something to do with plaintiff's "replica firearm." Besides the illegal arrest and unlawful detention, plaintiff also asserts malicious prosecution.

Finally, on page thirteen of the "Statement of Claims," plaintiff asserts that "John Doe created false information of unlawful possession of a firearm." (Docket No. 1-1 at 22). Defendant "Doe forwarded the false information to the prosecutor and the false information was likely to influence a jury[']s decision." Plaintiff states that other arresting officers assisted Doe "by creating material, false information and forwarding that information to a prosecutor or withholding material information from a prosecutor such as fact evidence [that the firearm was a] replica firearm." In addition, plaintiff contends that Doe "retaliated against him for his speech by convincing a prosecutor to bring criminal charges against him."

Based on these allegations, plaintiff claims that his First, Fourth, Eighth, and Fourteenth Amendment rights were violated. (Docket No. 1 at 5). He seeks $2 million in "actual damages and/or punitive damages [of] $1 million." (Docket No. 1 at 7). Plaintiff also requests unspecified "injunctive relief."

### Discussion

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983, alleging that defendants violated his constitutional rights by wrongfully arresting him on a warrant that contained false information. Because he is proceeding in forma pauperis, the Court reviewed plaintiff's complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court must dismiss this case without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B).

### A.  St. Louis Metropolitan Police Department

Plaintiff has named the St. Louis Metropolitan Police Department as a defendant in this action. A police department, however, is a department or subdivision of local government, and is not a distinct legal entity subject to suit. *Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82

(8th Cir. 1992) (affirming dismissal of West Memphis Police Department and West Memphis Paramedic Services because they were "not juridical entities suable as such"). *See also Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (stating that "county jails are not legal entities amenable to suit"); and *De La Garza v. Kandiyohi Cty. Jail*, 18 F. App'x 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's department as parties because they are not suable entities). Because it is not a suable entity, the claim against the St. Louis Metropolitan Police Department must be dismissed.

### B. City of St. Louis

Plaintiff has named the City of St. Louis as a defendant. A local governing body such as the City of St. Louis can be sued directly under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). However, a municipality cannot be held liable merely because it employs a tortfeasor. *A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a municipality … cannot be liable on a respondeat superior theory"). To prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of the City of St. Louis.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal

official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference"). To show deliberate

14

indifference, a plaintiff must prove that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

In this case, plaintiff has not presented facts supporting the existence of an unconstitutional policy or custom in the City of St. Louis, or that St. Louis has been deliberately indifferent in failing to train or supervise its employees.

First, plaintiff has not adequately alleged that he was harmed due to an unconstitutional City of St. Louis policy. Despite mentioning a purportedly unconstitutional "policy" in his complaint, plaintiff provides no facts referencing a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." He has not alleged facts that he was harmed by "a deliberate choice of a guiding principle or procedure made by the [City of St. Louis] official who has final authority regarding such matters." Plaintiff's reference to a "policy" is nothing more than an unsupported conclusion, which the Court is not required to accept as true. *See Glick v. Western Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (providing that a court "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts"). Further, to the extent plaintiff has presented any factual

allegations at all, they appear to concern a single arrest that took place on September 14, 2018. The Court cannot infer an unconstitutional policy from a single occurrence. *See Wedemeier v. City of Ballwin, Mo.*, 931 F.2d 24, 26 (8th Cir. 1991).

Second, plaintiff has not established that the City of St. Louis has an unconstitutional custom. That is, he has not presented facts showing the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the [the City of St. Louis's] employees," much less that policymaking officials were deliberately indifferent to or tacitly authorized such misconduct. To the contrary, plaintiff's facts – such as they are – describe a single arrest taking place on September 14, 2018, resulting in plaintiff's confinement until August 2, 2019. A single incident does not create a "pattern." As such, this single occurrence is not sufficient for the Court to infer the existence of an unconstitutional custom. *Id*.

Likewise, plaintiff has not demonstrated that the City of St. Louis has been deliberately indifferent in failing to train or supervise its employees. To show deliberate indifference, plaintiff must prove that the City of St. Louis "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." Typically, this is done by alleging a "pattern of similar constitutional violations by untrained employees." As noted above, plaintiff has not presented facts alleging any sort of "pattern," but has only related a single occurrence involving his arrest on September 14, 2018. To the extent that plaintiff's complaint accuses the City of St. Louis of a failure to train, it is an unsupported conclusion that is not entitled to the presumption of truth. *See Glick*, 944 F.3d at 717 (providing that a court "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts").

For all these reasons, plaintiff has failed to properly allege a municipal liability claim against the City of St. Louis. Therefore, this claim must be dismissed. *See Ulrich v. Pope Cty.*, 715

16

F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

### C. Prosecutor Griffith

Plaintiff has sued Prosecutor Griffith in an individual capacity, alleging that he has deprived plaintiff of access to exculpatory evidence and prevented him from examining the "[alleged] firearm" at issue in his criminal case. At the outset, the Court notes that plaintiff has failed to state a claim against Prosecutor Griffith. The reason is that he has not presented any facts – as opposed to labels, conclusions, and recitations of various causes of actions – showing that Griffith violated his constitutional rights. *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement"). Plaintiff makes no attempt to explain what actions Prosecutor Griffith personally took, or failed to take, that prevented him from accessing exculpatory evidence. Also, there is no indication as to the nature of this so-called exculpatory evidence, leaving the Court to speculate about the "replica firearm" plaintiff mentions elsewhere in his complaint, though never in reference to Prosecutor Griffith.

In any event, Prosecutor Griffith is immune from suit. Prosecutors are immune from 42 U.S.C. § 1983 liability so long as the actions complained of appear to be within the scope of prosecutorial duties. *Price v. Moody*, 677 F.2d 676, 677 (8th Cir. 1982). *See also Keating v. Martin*, 638 F.2d 1121, 1122 (8th Cir. 1980). The immunity enjoyed by prosecutors from § 1983 actions can be either absolute or qualified. *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996). A prosecutor is entitled to absolute immunity if he or she is acting as an advocate for the State in

a criminal prosecution. *Id*. On the other hand, a prosecutor is entitled to only qualified immunity when he or she pursues actions in an "investigatory" or "administrative" capacity. *Id*.

"Absolute immunity protects prosecutors against claims arising from their initiation of a prosecution and presenting a criminal case insofar as that conduct is intimately associated with the judicial phase of the criminal process." *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016). For instance, "[t]he acts of preparing, signing, and filing a criminal complaint constitute prosecutorial functions, as they are advocacy on behalf of the government." *Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006).

Prosecutorial immunity depends on the functional nature of the prosecutor's activities; therefore, immunity is not defeated by "allegations of improper motive in the performance of prosecutorial functions." *Sample*, 836 F.3d at 916. Absolute immunity still applies even when there are allegations of malice, vindictiveness, or self-interest. *Reasonover v. City of St. Louis, Mo.*, 447 F.3d 569, 580 (8th Cir. 2006). Absolute immunity also "covers actions taken to initiate a prosecution, even if those actions are patently improper." *Saterdalen v. Spencer*, 725 F.3d 838, 842 (8th Cir. 2013). In addition, "a prosecutor is immune from suit even if he knowingly presented false, misleading, or perjured testimony or withheld or suppressed exculpatory evidence." *Woodworth v. Hulshof*, 891 F.3d 1083, 1089 (8th Cir. 2018).

Based on the allegations in the complaint, Prosecutor Griffith has absolute immunity, as there is no indication that Prosecutor Griffith acted as anything other than an advocate for the State of Missouri. There is no suggestion that Prosecutor Griffith was pursuing actions in an "investigatory" or "administrative" capacity. Rather, as best the Court can tell from plaintiff's conclusory pleading, it seems that plaintiff is upset about Prosecutor Griffith's handling of his criminal case, particularly with regard to accessing evidence to assist his defense. As noted above,

18

absolute immunity protects Griffith from suit, even if Griffith acted maliciously, vindictively, self-interestedly, or "withheld or suppressed exculpatory evidence."

For these reasons, plaintiff's claims against Prosecutor Griffith in his individual capacity must be dismissed.

### D.  Official Capacity Claims Against Doe Defendants

Plaintiff has sued the six John or Jane Doe defendants in their official capacities. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly*, 813 F.3d at 1075 (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"). In order to prevail on an official capacity claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075.

Here, the six Doe defendants are alleged to be "arresting officer[s]" employed by the St. Louis Metropolitan Police Department. As such, the official capacity claims against them are treated as claims against the City of St. Louis itself, their employer. However, as discussed above, plaintiff has not stated a claim against the City of St. Louis, because he has not established the existence of an unconstitutional policy, custom, or failure to train. It therefore follows that the official capacity claims against the six John or Jane Doe defendants must be dismissed.

### E.  Individual Capacity Claims Against Doe Defendants

Plaintiff has also sued the six John or Jane Doe defendants in their individual capacities, accusing them of a variety of constitutional violations stemming from his September 14, 2018 arrest.

### i.      False Arrest Claims

Plaintiff alternately states that he was falsely arrested, falsely imprisoned, unlawfully detained, and unlawfully restrained from his life, liberty, or property. All these various claims stem from the Fourth Amendment right to be free from illegal searches and seizures. In particular, plaintiff alleges that his arrest was pursuant to a warrant that included false information.

"Under the Fourth Amendment, a person has a right to be secure in his person and warrants may not issue but upon probable cause." *Ross v. City of Jackson, Mo.*, 897 F.3d 916, 920 (8th Cir. 2018). The warrant itself shields the officer who is executing it, "unless a reasonably well-trained officer would have known that the arrest was illegal despite the magistrate's authorization." *See Stigall v. Madden*, 26 F.3d 867, 869 (8th Cir. 1994). That is, when an alleged Fourth Amendment violation involves a search or seizure conducted pursuant to a warrant, "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or…in objective good faith." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). Nevertheless, "the fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure does not end the inquiry into objective reasonableness." *Id*. at 547. To the contrary, the Supreme Court has recognized an exception that allows "suit when it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Wheeler v. City of Searcy, Arkansas*, 14 F.4[th] 843, 852 (8th Cir. 2021).

20

One of the situations in which an officer will have no reasonable grounds for believing a warrant was properly issued "occurs when the affiant recklessly or knowingly placed false information in the affidavit that misled the issuing judge." *Id*. Thus, a Fourth Amendment violation occurs when a law enforcement officer's "probable cause statement contained a deliberate falsehood or he acted with reckless disregard for the truth when he prepared it." *See Murray v. Lene*, 595 F.3d 868, 872 (8th Cir. 2010). "Omissions can likewise vitiate a warrant if" two things are proven. *United States v. Ketzeback*, 358 F.3d 987, 990 (8th Cir. 2004). First, the aggrieved party must show "that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading." *Id*. Second, the aggrieved party must also prove "that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause." *Id*.

With regard to Doe #1, most of plaintiff's allegations consist of conclusory labels, accusing Doe #1 of "deliberate indifference," the "restraint of life, liberty, and property without due process of law," the intentional or "reckless disregard for truth," the creation of "false information for arrest when in support of [a] warrant [that included] a false statement," "false arrest without legal process, false imprisonment by detention without legal process, [and] malicious prosecution by wrongful institution of legal process." Plaintiff further states that Doe #1 knew that probable cause for the warrant was based on information that was "false or would have known to be false had defendant not recklessly disregarded [the] truth," and that Doe #1 "created false information for [his] arrest" for unlawful possession of a firearm on September 14, 2018.

Elsewhere in his complaint, plaintiff indicates that this false information consisted of the fact that he was arrested for possessing a "replica firearm." The Court notes, however, that he

21

never expressly states that Doe #1 – or any other specific defendant – knew this particular detail.[4] Plaintiff also does not explain what he means by "replica firearm." For example, it is unclear whether plaintiff is referencing an object that looks like a firearm but is inoperable, an operable firearm meant to look like an antique, or something else entirely.

Regardless, these allegations are insufficient to state a claim for a Fourth Amendment violation against Doe #1. As noted above, "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or…in objective good faith." *See Messerschmidt*, 565 U.S. at 546. There is an exception, however, when a law enforcement officer's "probable cause statement contained a deliberate falsehood or he acted with reckless disregard for the truth when he prepared it." *See Murray*, 595 F.3d at 872.

Setting aside plaintiff's conclusions, he has not shown that this exception applies to him. In other words, he has failed to allege that Doe #1 sought an arrest warrant by utilizing a probable cause statement containing a deliberate falsehood, or that Doe #1 acted in reckless disregard for the truth. Plaintiff generally states that he was charged with unlawful possession of a firearm even though it was a "replica." However, as noted above, he never explicitly alleges that Doe #1 personally knew the firearm to be a replica, much less presents any facts showing *how* Doe #1 might have known this, *when* Doe #1 knew this, or that otherwise describes what plaintiff means when he accuses Doe #1 of having "created false information" in order to arrest plaintiff. For instance, plaintiff does not allege that Doe #1 received information that plaintiff had an inoperable

---

[4]At one point in the complaint, plaintiff states that: "Assisting arresting officer defendant(s) John Doe participated [in] assisting a prosecution by creating material, false information and forwarding that information to a prosecutor or withholding material information from a prosecutor such as fact evidence [about a] replica firearm from a prosecutor." (Docket No. 1-1 at 22). This section does not identify which of the six Doe defendants knew about a "replica firearm," nor does it explain how or when each Doe defendant came by this information, or how they created "material, false information," or how they withheld this information.

22

replica firearm, wrongfully told a judge that the replica was actually an operable firearm that plaintiff was not allowed to possess, and thereby got a warrant for plaintiff's arrest. Instead, he essentially asks the Court to broadly speculate as to what happened, without any facts upon which to base that speculation.

To demonstrate Doe #1's personal responsibility, plaintiff must show "a causal link to, and direct responsibility for, the deprivation of rights." *See Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006). As discussed above, plaintiff has not done this. Rather, the allegations against Doe #1 are marked by an absence of specific actions, a failure to provide facts to support his premises, and a distinct lack of context. Instead of presenting the basic details of his claim, plaintiff relies on the repetition of labels, conclusions, and the recitation of causes of action. This is insufficient to state a claim. *See Neubauer*, 849 F.3d at 404 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement"). Therefore, for these reasons, the false arrest claim against Doe #1 must be dismissed.

As to Doe #2, most of plaintiff's allegations consist of conclusory labels, stating that Doe #2 was "personally responsible [for] illegal arrest, false [imprisonment], [and] malicious prosecution." Plaintiff further accuses Doe #2 of removing him "from [the] place where [plaintiff was] found against [plaintiff's] will and without [plaintiff's] consent." In other words, plaintiff appears to identify Doe #2 as the arresting officer.

These allegations are insufficient to state a claim for a Fourth Amendment violation against Doe #2. As with Doe #1, there are no facts establishing what Doe #2 actually did or did not do to violate plaintiff's constitutional rights. *See Mayorga*, 442 F.3d at 1132 (stating that 42 U.S.C. § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights").

23

In particular, there are no factual allegations as to what Doe #2 personally knew that would have indicated that the arrest warrant was based on false information or that the arrest was illegal despite being authorized by a magistrate. Furthermore, there is nothing to demonstrate that Doe #2 should have known this information based on the circumstances. In other words, plaintiff has not presented facts establishing *when* or *how* Doe #2 might have come by information that would have made it unreasonable to rely on the arrest warrant. Without such facts, the mere assertion that Doe #2 arrested plaintiff "without [his] consent" fails to establish a constitutional harm.

Rather than providing the necessary factual allegations to support his contentions, plaintiff relies entirely on labels, conclusions, and the recitation of causes of action. Without more, this is inadequate to state a claim. *See Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010) (explaining that "[a] pleading that merely pleads labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice"). Therefore, the false arrest claim against Doe #2 must be dismissed.

Regarding Doe #3, Doe #4, Doe #5, and Doe #6, plaintiff vaguely asserts that they assisted in his arrest. As discussed above, plaintiff must establish a causal link between each defendant's actions and the violation of a constitutional right. *See Mayorga*, 442 F.3d at 1132. Plaintiff has not done this. Nothing in the complaint actually indicates the personal responsibility of these defendants for harming him. For example, plaintiff does not allege what information about the arrest warrant each of these defendants knew, how they knew it, and when they knew it. Without such facts, plaintiff has not established that these defendants acted unreasonably in assisting plaintiff's arrest pursuant to a warrant.

Instead of facts, plaintiff relies on labels, conclusions, and the recitation of the elements of various causes of action. As previously noted, this is insufficient to state a claim. *See Johnson v.*

*Precythe*, 901 F.3d 973, 977 (8th Cir. 2018) ("A pleading must offer more than labels and conclusions or a formulaic recitation of the elements of a cause of action to state a plausible claim for relief"). Therefore, the false arrest claims against Doe #3, Doe #4, Doe #5, and Doe #6 must be dismissed.

ii.     **First Amendment Retaliation Claims**

Plaintiff accuses Doe #3 and Doe #4 of retaliating against him for exercising his right to free speech, in violation of the First Amendment. As a general matter, the First Amendment prohibits government officials from retaliating against an individual for speaking out. *See Hartman v. Moore*, 547 U.S. 250, 256 (2006). In order to prevail on a First Amendment retaliation claim, a plaintiff "must show that [he] engaged in protected activity, that the [defendant's] actions caused an injury to the [plaintiff] that would chill a person of ordinary firmness from continuing to engage in the activity, and that a causal connection exists between the retaliatory animus and the injury." *Small v. McChrystal*, 708 F.3d 997, 1008 (8th Cir. 2013).

Retaliation does not need to be the "sole motive" in taking an action against the plaintiff, but it must have been a "substantial factor" in the decision. *Kilpatrick v. King*, 499 F.3d 759, 767 (8th Cir. 2007). Furthermore, the plaintiff must demonstrate that the retaliatory motive was a "but-for" cause of the action. *Baribeau v. City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010). *See also Osborne v. Grussing*, 477 F.3d 1002, 1006 (8th Cir. 2007) (explaining that "[i]f there is a finding that retaliation was not the but-for cause…the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind"). That is, plaintiff must show that he was "singled out" because of his exercise of constitutional rights. *Baribeau*, 596 F.3d at 481. *See also Bernini v. City of St. Paul*, 665 F.3d

997, 1007 (8th Cir. 2012) (stating that to establish a causal connection, the plaintiff must show that he was "singled out" because of his exercise of constitutional rights).

Here, with regard to Doe #3, plaintiff alleges that Doe #3 "retaliated against him for his speech which cause[d] deliberate indifference[,] restraint [of] life, liberty, [and] property without due process of law by convincing a prosecutor to bring criminal charges against him by making a lawful arrest for [an] unconstitutional reason ...." Likewise, plaintiff asserts that Doe #4 "acted with deliberate indifference to the First Amendment of [the] U.S. Constitution [violating his] right to freedom of speech."

These allegations do not establish a retaliation claim under the First Amendment. To begin, he has not presented any facts showing that he engaged in "protected activity." He mentions his "speech" and his "right to speech," yet presents no facts demonstrating how or in what manner he exercised this right. In addition, while plaintiff states that he was detained for his "speech," he provides no facts connecting his arrest to his exercise of the First Amendment. That is, plaintiff has not shown that plaintiff's "speech" was the but-for cause of his arrest. To the contrary, he repeatedly states that he was arrested and charged with unlawful possession of a firearm. There is nothing in the complaint to suggest that plaintiff's possession of a firearm – or a replica firearm – constituted protected First Amendment activity.

Aside from his own purported "speech," plaintiff appears to assert that his First Amendment rights were violated when Doe #3 and Doe #4 "used speech" to create false information leading to his arrest. This allegation is entirely conclusory, providing no information as to what Doe #3 and Doe #4 said, when they said it, why the statements were false, and how the statements led to his arrest. Consequently, plaintiff has not stated a claim. *See Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017) ("Courts are not bound to accept as true a legal conclusion couched

as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level").

Additionally, this allegation does not implicate plaintiff's speech rights at all. The First Amendment guarantees the right of free speech, and "prohibits laws abridging the freedom of speech." *Turning Point USA at Arkansas State University v. Rhodes*, 973 F.3d 868, 875 (8th Cir. 2020). It further prohibits government officials from retaliating against an individual for speaking out. *See Hartman*, 547 U.S. at 256. That is, the First Amendment protects plaintiff's ability to engage in protected activity. *See Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004) (explaining that a First Amendment retaliation claim must include allegations that plaintiff engaged in protected activity and that defendants, to retaliate for the protected activity, took adverse action against plaintiff that would chill a person of ordinary firmness from engaging in that activity). Plaintiff provides no support for the proposition that his First Amendment rights can be violated by the speech of others.

For all these reasons, plaintiff has failed to state a First Amendment retaliation claim against Doe #3 and Doe #4. Therefore, these claims must be dismissed.

### iii.    Fair Trial Claims

Plaintiff asserts that all the Doe defendants violated his right to a fair trial. Even though plaintiff does not allege he had a trial – and has presented an exhibit showing that the prosecutor decided not to prosecute – he accuses the Doe defendants as a group of creating "false information likely to influence a jury's decision and [forwarding] that information to prosecutors." The allegations against all six Doe defendants fails to assert each individual's personal responsibility.

Liability in a 42 U.S.C. § 1983 case is personal. *Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own

misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga*, 442 F.3d at 1132. *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

In his fair trial claim, plaintiff treats all the Doe defendants as an undifferentiated group. He makes no attempt to allege what each particular defendant did or did not do, or to connect each defendant to the challenged action. In other words, plaintiff has not alleged a "causal connection between any action on the part of the defendants and any alleged deprivation" of his rights.

Further, as with most of plaintiff's complaint, the fair trial claim consists solely of labels, conclusions, and causes of action. For instance, plaintiff refers to the creation and fabrication of evidence, without any indication as to what that evidence consisted of, or why he believes it to be created or fabricated. The Court is not required to accept such broad and conclusory pleadings as true. *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("While the court must accept allegations of fact as true … the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations").

For all these reasons, plaintiff has failed to state fair trial claims against the Doe defendants. Therefore, these claims must be dismissed.

### iv.    Conspiracy Claim

At different places in his complaint, plaintiff asserts that all the Doe defendants acted "together as a moving force" to create false information for his arrest. To the extent that plaintiff is alleging a conspiracy, he has failed to state a claim.

"To prove a [42 U.S.C.] § 1983 conspiracy claim against a particular defendant, the plaintiff must show: that the defendant conspired with others to deprive him or her of a constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured the plaintiff." *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999). Additionally, in order to prevail, the plaintiff is required to prove the deprivation of a constitutional right or privilege. *Riddle v. Riepe*, 866 F.3d 943, 948 (8th Cir. 2017). *See also Draper v. City of Festus, Mo.*, 782 F.3d 948, 953 (8th Cir. 2015). "Absent a constitutional violation, there is no actionable conspiracy claim." *In re Kemp*, 894 F.3d 900, 910 (8th Cir. 2018).

Here, plaintiff provides no factual support for the proposition that the Doe defendants were "acting together" in concert. That is to say, plaintiff has not alleged that the six Doe defendants agreed among themselves to violate plaintiff's constitutional rights. *See Burbridge v. City of St. Louis, Missouri*, 2 F.4th 774, 782-83 (2021) (stating that "[t]o prevail on a [42 U.S.C.] § 1983 conspiracy claim, [the plaintiff] must show that … the defendants agreed to deprive him of his constitutional rights"). In addition, as discussed above, plaintiff's facts are not sufficient to establish that the Doe defendants violated the constitution, which is required to support a conspiracy claim.

For these reasons, plaintiff has failed to state a 42 U.S.C. § 1983 conspiracy claim against the six Doe defendants. Therefore, the claim must be dismissed.

### F.   Takings Claim

Plaintiff asserts that the City of St. Louis, as well as some of its law enforcement officers, took his private property – a "replica firearm" – for public use without just compensation. He also states that this property was taken without due process of law.

To the extent that plaintiff is alleging a violation of the Fifth Amendment's Takings Clause, the Court notes that the Fifth Amendment provides that "private property" shall not "be taken for public use, without just compensation." U.S. Const. amend. V. The Takings Clause is applicable to the States through the Fourteenth Amendment. *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 536 (2005). Its purpose is to bar the government "from forcing some people alone to bear public burdens which, in all fairness, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960). "The public purpose requirement … is satisfied where the exercise of the eminent domain power is rationally related to a conceivable public purpose." *Dahlen v. Shelter House*, 598 F.3d 1007, 1012 (8th Cir. 2010). With regard to just compensation, as long as the property owner has some way to obtain after-the-fact compensation, a government does not have to provide compensation in advance of a taking. *Knick v. Township of Scott, Pennsylvania*, 139 S.Ct. 2162, 2167-68 (2019).

Here, plaintiff has not presented facts implicating the Fifth Amendment in his case, much less demonstrating that it has been violated. For example, plaintiff has not explained whether the "taking" of his "replica firearm" was for a public use, a private use, or whether it was simply being held as evidence in a criminal case. Further, as to just compensation, plaintiff has not asserted that he has sought compensation, been denied compensation, or what he believes to be appropriate compensation. Instead, he has simply recited the language of the Fifth Amendment, without any

additional facts. For pleading purposes, "a formulaic recitation of the elements of a cause of action" is not sufficient to state a claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To the extent that plaintiff is alleging a violation of the Due Process Clause with regard to his property, he has likewise failed to state a 42 U.S.C. § 1983 claim. "When a state employee's unauthorized, random acts deprive a person of property, the state employee's acts do not violate the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Clark v. Kansas City Mo. Sch. Dist.*, 375 F.3d 698, 702 (8th Cir. 2004). Missouri provides such an adequate postdeprivation remedy. *See Orebaugh v. Caspari*, 910 F.2d 526, 527 (8th Cir. 1990). Specifically, an individual claiming the right to possession of personal property may bring an action in replevin. RSMo § 99.01. *See also Allen v. City of Kinloch*, 763 F.2d 335, 337 (8th Cir. 1985) (stating that plaintiff seeking return of personal property under 42 U.S.C. § 1983 failed to establish any violation of his constitutional rights because he could obtain adequate relief by filing a replevin action under Missouri law).

For these reasons, plaintiff has not established a takings claim under the Fifth or Fourteenth Amendments. Therefore, this claim must be dismissed.

### G. Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (Docket No. 4). The motion will be denied as moot as this case is being dismissed without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $3.43 within twenty-one (21) days of the date of this order. Plaintiff is instructed to make his remittance

payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison

registration number; (3) the case number; and (4) the statement that the remittance is for an original

proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket

No. 4) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice. *See* 28

U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in

good faith.

Dated this 1st day of December, 2021.


**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**